**UNITED STATES of America ex rel. James ROGERS, Appellant,**

v.

**WARDEN OF ATTICA STATE PRISON, Attica, New York, Appellee.**

**No. 459, Docket 30874.**

United States Court of Appeals
Second Circuit.

Argued May 10, 1967.

Decided June 15, 1967.

On Rehearing July 10, 1967.

Gretchen White Oberman, New York City (Anthony F. Marra, The Legal Aid Society, New York City, on the brief), for appellant.

Amy Juviler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen. of counsel), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The underlying question presented on this appeal is whether a defendant who enters a guilty plea in a New York State court, knowing that he may subsequently challenge in the state's appellate process the denial of his pretrial motion to suppress evidence alleged to be the fruit of an illegal search and seizure, should be considered to have waived the right to raise his Fourth Amendment claims in the federal courts by way of an appli-

cation for habeas corpus. We are also asked to examine the murky area of probable cause for the issuance of a search warrant.

## I. *The Facts*

The facts in the case are not in dispute and lend themselves to simple statement. On January 12, 1963, Judge O'Grady, of the New York City Criminal Court, issued a warrant to search Rogers' apartment which occupied the first and basement floors at 191 Quincy Street, Brooklyn. The warrant was based on the affidavit of Detective Gowski of the Brooklyn District Attorney's Office. He stated that he had probable cause to believe that appellant was in possession of narcotic drugs and paraphernalia which could be found in his apartment.[1] Nine days after the warrant was issued, officers of the New York City Police Department's Narcotics Bureau searched the apartment and found narcotics, cutting implements, and a loaded .22 caliber automatic gun.

Two indictments were subsequently filed against Rogers. In one, he was charged with violation of the state's nar-

cotics law, while in the other he was accused of carrying a dangerous weapon and of having committed second and third degree assaults during the search of his apartment. Rogers then moved in the Kings County Supreme Court to set aside the search warrant and to suppress the evidence that had been obtained, claiming that Gowski's affidavit was insufficient as a matter of law to create probable cause for the issuance of the warrant. When his motion was denied, Rogers pleaded guilty to one count—a reduced charge recommended by the prosecutor—carrying a dangerous weapon (N. Y. Penal Law, McKinney's Consol. Laws, c. 40 § 1897), which covered all the counts of both indictments. On September 11, 1963, Judge Malbin of the Kings County Supreme Court sentenced Rogers to a term of from 2½ to 5 years in state prison.

Appellant then pursued in the state courts his appeal from the judgment of conviction and, pursuant to section 813-c of the New York Code of Criminal Procedure, urged the reviewing court to reverse the intermediate order denying his

---

1. The affidavit, which was the only information presented to Judge O'Grady, read as follows:
   1. I am a detective assigned to the Brooklyn District Attorney's Off.
   2. I have information based upon confidential information received from an an [sic] informant known to be reliable and accurrate [sic] and whose information in the past has led to the arrest and conviction of three persons. The information is that Jimmy Rogers and other persons found in said apartment are selling narcotic drugs in the 1st fl. & basement apartment of premises 191 Quincy St., Brooklyn, N. Y. Observations by the deponent of the premises on Thursday, January 10, 1963, between the hours of 8:00 and 9:00 P. M. five unknown males and two known male addicts were seen entering the premises; on January 11th, 1963, from 9:00 to 11:00 A. M. four unknown males and two known male addicts.

   By reason of the aforesaid the deponent has probable cause to believe that narcotic drugs and paraphernalia commonly used by drug sellers and addicts

   may be found at the aforesaid premises and upon the persons found therein.
   3. Based upon the foregoing reliable information and upon my personal knowledge there is probable cause to believe that such property, to wit, narcotic drugs and paraphernalia commonly used by drug addicts and sellers and [sic] may be found in the possession of Jimmy Rogers and' upon the persons found therein or at premises first floor and basement of 191 Quincy Street, Brooklyn, N. Y.

   WHEREFORE, I respectfully request that the court issue a warrant and order of seizure, in the form annexed, authorizing the search of 1st floor and basement of 191 Quincy St., Brooklyn, N. Y. and directing that if such property or evidence or any part thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

   No previous application in this matter has been made in this or any other court or to any other judge, justice or magistrate.

pre-trial suppression motion.[2] The Appellate Division, Second Department, affirmed the judgment and order in a brief memorandum opinion, stating *inter alia*:

> The affidavit of the police officer, on the basis of which the search warrant was issued, shows that the undisclosed informant, to whom reference is made in the affidavit, was reliable and had given the police the information that defendant and others "found" in the subject premises "are selling narcotic drugs" therein. *We read this to mean that the informant saw the traffic in narcotics taking place in the premises.* 22 A.D.2d 902, 255 N.Y.S.2d 332–333 (1964). (Emphasis added.)

The New York Court of Appeals also rejected Rogers' contentions, accepting the Appellate Division's assumption that "the informer had seen narcotic drug transactions in the apartment". 15 N.Y. 2d 422, 424, 260 N.Y.S.2d 433, 434, 208 N.E.2d 422 (1965).

Having unsuccessfully litigated his claims in the state courts, Rogers applied for a writ of habeas corpus in the United States District Court.[3] The judge did not reach the merits of appellant's claim but, citing our decision in U. S. ex rel. Glenn v. McMann, 349 F.2d 1018 (1965), cert. denied, 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966), denied the application on the ground that appellant's plea of guilty in the state court barred him from raising his Fourth Amendment claims in a federal habeas corpus proceeding. 255 F.Supp. 516 (N.D.N.Y. 1965). Judge Port having granted a certificate of probable cause, we now review his denial of the writ.

## II. *Waiver*

■■ At the threshold we must decide whether, in light of the procedures provided by New York in section 813-c, Rogers' plea of guilty in the state courts foreclosed him from challenging the validity of the search warrant in the federal courts.[4] The general rule, well established in this and other Circuits, is that a "voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage

**2.** Section 813–c provides, in part, that if a pre-trial suppression motion is denied, "the order denying such may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." This section is discussed in greater depth in part II of this opinion.

**3.** When the application for the writ was made in October 1965, appellant was incarcerated in Auburn State Prison. His application was, therefore, directed against the Warden of Auburn. Rogers subsequently was transferred to Attica State Prison, and was released on parole in the custody of the Warden of Attica on October 10, 1966. The parties have stipulated, therefore, that the Warden of Attica should be substituted as the appellee.

**4.** The District Courts in this Circuit have differed on this question. Compare U. S. ex rel. Mendez v. Fish, 259 F.Supp. 146 (S.D.N.Y.1965), with U. S. ex rel. Jackson v. Warden, 255 F.Supp. 33 (S.D.N.Y. 1966).

In U. S. ex rel. LaMonica v. Buono, 257 F.Supp. 504 (S.D.N.Y.1966), the petitioner moved the state court to suppress evidence that was allegedly obtained by an illegal search. The court *granted* the motion and the state appealed the intermediate order pursuant to §§ 518(6), 518–a of the New York Code of Criminal Procedure. The Appellate Division then reversed and the New York Court of Appeals affirmed the Appellate Division. A petition for certiorari was denied by the United States Supreme Court. Petitioner then pleaded guilty, and subsequently sought a writ of habeas corpus in the federal courts. His application was denied by the District Court which held:

> However, the New York procedure may affect the federal rule where the plea of guilty is entered following the denial of a motion to suppress, it can have no effect where, as here, petitioner has had full recourse to all state appellate courts prior to pleading guilty. Accordingly, the application is denied. 257 F.Supp. at 505 (footnote omitted).

Because the present case does not involve a defendant, who had recourse to the state appellate process *prior* to entering a plea of guilty, it should be emphasized that we are not passing on the issues presented in *LaMonica*.

of the proceedings against him." U. S. ex rel. Glenn v. McMann, 349 F.2d at 1019. See U. S. ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. 1965); Wallace v. Heinze, 351 F.2d 39 (9th Cir. 1965), cert. denied, sub nom. Wallace v. Oliver, 384 U.S. 954, 86 S.Ct. 954 (1966); Alexander v. United States, 290 F.2d 252 (5th Cir.) cert. denied, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed. 89 (1961). The rationale behind this doctrine is not difficult to discover. It is reasonable to conclude that when a defendant knowingly enters a guilty plea, it is an independent admission of the facts charged; thus, it becomes unnecessary for the prosecution to offer any evidence. And, since the conviction is based solely on the plea of guilty or admission of the facts charged, no purpose would be served in permitting a defendant to argue *ab initio* on appeal that there had been an illgal search and seizure. See U. S. ex rel. Vaughn v. LaVallee, 318 F.2d 499 (2d Cir. 1963). Therefore, in the greater number of state courts a guilty plea bars a defendant from raising his Fourth Amendment claims in a subsequent appeal. And, since the defendant is presumed to be aware of this consequence, the federal courts have properly concluded that his plea constitutes an "intentional relinquishment or abandonment" (Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) of his Fourth Amendment claims. It follows, therefore, that one who knowingly fails to raise his constitutional arguments via the appropriate and reasonable state procedures that have been provided waives his right to raise these same claims before a federal court in an application for a writ of habeas corpus. See Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[5]

But while there is merit to the general rule that a guilty plea in a state court waives a defendant's right to raise in the federal courts alleged non-jurisdictional defects, we must be wary of blindly applying this doctrine to every case involving such a plea. There is nothing inherent in the nature of a plea of guilty which *ipso facto* renders it a waiver of a defendant's constitutional claims. Rather, waiver is presumed because ordinarily such a plea is an indication by the defendant that he has deliberately failed or refused to raise his claims by available state procedures; therefore, principles of comity and the interests of orderly federal-state relations require that he should not be allowed to present these claims to the federal courts. Thus, the question we are called upon to decide in the present case is whether, in light of the explicit language in § 813-c, Rogers' plea of guilty can properly be construed as an "intentional relinquishment or abandonment" of his Fourth Amendment contentions.

The answer to this inquiry must necessarily begin with an examination of section 813-c which provides:

> A person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the property, papers or things hereinafter referred to as property, claimed to have been unlawfully obtained may be used as evidence against him in a criminal proceeding, may move for the return of such property or for the suppression of its use as evidence. The court shall hear evidence upon any issue of fact necessary to determination of the motion.

> If the motion is granted, the property shall be restored unless otherwise subject to lawful detention, and in any

---

5. For the same reason, a defendant who pleads guilty in a federal prosecution, thereby foreclosing his opportunity to raise on appeal alleged non-jurisdictional defects, see, e. g., United States v. Doyle, 348 F.2d 715, 718 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965), is deemed to have waived his right to present these claims in an application pursuant to 28 U.S.C. § 2255. See, e. g., Winston v. United States, 224 F.2d 337 (2d Cir.), cert. denied, 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 803 (1955); Hoffman v. United States, 327 F.2d 489 (9th Cir. 1964).

event it shall not be admissible in evidence in any criminal proceeding against the moving party.

If the motion is denied, the order denying such may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty.[6]

New York has thus provided a specific statutory exception to the general rule that a plea of guilty bars a defendant from raising on appeal alleged non-jurisdictional defects. And, we are quite easily able to discern legitimate and powerfully compelling reasons for establishing such an exception. In the greater number of cases, the present one being illustrative, a defendant in a criminal case recognizes that unless he succeeds in suppressing the evidence seized, the state will have little difficulty in proving the charges filed against him. A defendant may well have no desire to go to trial once his pre-trial suppression motion has been denied, and thereafter may lose heart for any defense to the charges. If, however, the defendant is confronted with state law which decrees that a plea of guilty bars him from appealing the denial of his motion, then he will be presented with a *fait accompli* and be forced to proceed to trial just so that he can preserve his right to appeal. Section 813-c is an enlightened statute and was designed to alleviate this undesirable and archaic end which can only result in cluttering trial calendars. The guilty plea in such circumstances is mere-

ly a procedural step which permits review of the defendant's constitutional claims without the necessity of a trial that would be a waste of time, money and manpower.

But, we then must ask, what are the rights of the criminal defendant who chooses to follow the procedure New York has established in Section 813-c? Does he thereby lose a right that he would otherwise have enjoyed if he went to trial—the right to raise his Fourth Amendment claims in an application for federal habeas corpus should his state appeal prove unsuccessful? The question suggests the wisdom of a negative response.

When Rogers' pre-trial suppression motion was denied, he had no right of appeal from that intermediate order. See People v. Merz, 20 A.D.2d 918, 249 N.Y. S.2d 475 (2d Dept. 1964); People v. Oliver, 38 Misc.2d 320, 238 N.Y.S.2d 220 (1963). At that juncture he was faced with a hard choice. True, he could demand a trial, realizing that the state could easily prove its case, and then on appeal from the conviction he could challenge the denial of his suppression motion. Or he could simply plead guilty, as he did, thereby avoiding an unnecessary, costly and time-consuming trial, and still preserve under § 813-c his right to appeal the denial of his motion.

■ In these circumstances, we are of the view that appellant's decision to enter a plea of guilty cannot fairly or realistically be viewed by a Federal District Court as an "intentional relinquishment or abandonment" by Rogers of his Fourth Amendment claims. Indeed, it

---

**6.** Section 813–d establishes the time for making and determining the defendant's motions, and also provides that if a timely motion is not made, "the defendant shall be deemed to have waived any objection during trial to admission of evidence based on the ground that such evidence was unlawfully obtained." Section 813–e states in what court the motion shall be made.

A similar statutory scheme is provided with regard to confessions. Within a reasonable time before trial, the state must give written notice to a defendant or his counsel that it intends to offer a confession or admission of the defendant.

If the defendant claims that the confession or admission is involuntary, he may move the appropriate court (§ 813–i), within a reasonable time (§ 813–h) to suppress it. If the motion is denied, that order "may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." Section 813–g.

If the defendant fails to make a timely motion, however, he is *not* deemed to have waived his right during the trial to object to the introduction of the confession or admission based on the ground that it was involuntary. Section 813–h.

would be anomalous if a defendant by scrupulously following a sanctioned and reasonable state procedure for preserving his federal constitutional claims on appeal in the state courts, simultaneously waived his right to present these same claims to a federal court in an application for habeas corpus because he was lulled into following state procedures.[7] Rogers followed mandated state procedures and exhausted his required state remedies. 28 U.S.C. § 2254. The District Court, therefore, should have considered the merits of his claim that there was no probable cause for the issuance of the search warrant.[8]

### III. *Probable Cause*

■ There is no need, however, to remand the case to the District Court to consider the merits of Rogers' claims for in the circumstances of this case we find the record sufficient to make a determination of our own. In deciding whether the warrant was issued on probable cause we can consider only the information that was presented to the magistrate. Giordenello v. United States, 357 U.S. 480, 486–487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). In the present case, this information was contained exclusively in Gowski's affidavit, which is before us. Thus, we see no need for an evidentiary hearing, and no purpose would be served in remanding the case to the District Court to consider Gowski's affidavit in light of our opinion, for we are equally capable of giving this consideration. See Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

### A. *The Applicable Standards*

Our inquiry cannot proceed without an examination of the Fourth Amendment's requirements:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation*, and particularly describing the place to be searched and the persons or things to be seized. (Emphasis added.)

■ Since the Supreme Court's landmark decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), holding that the Fourth Amendment's proscriptions apply to the states through the Fourteenth Amendment, we have been informed that the standards for obtaining a valid search warrant are the same under both amendments. See Aguilar v. State of Texas, 378 U.S. 108, 110, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Ker v. State of California, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). And, the determination of whether probable cause exists for the issuance of a warrant quite properly must be made by "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

---

7. Since a guilty plea in these circumstances is merely a procedural step permitting review without being compelled to submit to trial, which the defendant seeks to avoid, it is of no relevance that the plea may have been given voluntarily. Thus, there is no need to remand this case to the District Court for such a determination. In fact, Rogers readily concedes that his plea was voluntary.

8. The state's brief raises a number of arguments to support its position that Rogers' plea of guilty prevents him from challenging the legality of the search and seizure in an application for federal habeas corpus. We have considered all of these contentions and find that most of them do not deal with the essential issue—whether, in view of the procedure established in § 813–c, appellant's plea of guilty should be construed as an "intentional relinquishment or abandonment" of his Fourth Amendment claims. Thus, for example, the fact that Rogers was permitted to plead guilty to only one count of the two indictments, received a light sentence, raised his claims in 2 state appellate courts, and could have requested a trial, is not in our view relevant to the question of waiver. Those arguments presented by the state that do touch on the waiver issue are, we believe, answered in part II of our opinion.

This independent evaluation by a judicial officer as to the existence of probable cause is essential if we are to be assured that the right of privacy, which the Fourth Amendment is designed to protect, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (U.S. May 29, 1967), Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L. Ed.2d 930 (1967), is not eroded by the action of police officers who, in their well-meaning but occasionally over-zealous efforts to protect the citizenry, cannot, because of their understandable partisanship, appraise objectively and impartially the potency of their cause. It is not the magistrate's function, therefore, merely to determine whether the official seeking the warrant believes that probable cause exists; rather, the magistrate must ask whether the facts presented persuade *him* that there is probable cause. See Johnson v. United States, 333 U.S. at 14, 68 S. Ct. 367, 92 L.Ed. 436; U. S. ex rel. De-Negris v. Menser, 360 F.d 199, 203–204 (2d Cir. 1966).

■ Once there has been a judicial determination of probable cause, however, it will not be handily overturned by an appellate court. The question we must ask in reviewing the magistrate's conclusion is whether "there was substantial basis for [him] to conclude that narcotics were probably present". Jones v. U. S., 362 U.S. at 271, 80 S.Ct. 736. Nevertheless, in an appropriate case a finding of probable cause must be reversed, for "[a]lthough the reviewing court will pay substantial deference to a judicial determination of probable cause, the court must insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." Aguilar v. State of Texas, 378 U.S. at 111, 84 S.Ct. at 1512.

### B. *The Affidavit*

We now turn our attention to the information presented to the judge in this case. In examining Gowski's affidavit [9] (the only evidence before the judge who issued the warrant), it is evident that it contains but 2 statements upon which the finding of probable cause may have been premised. First, Gowski reported that he had received "confidential information * * * from an an [sic] informant known to be reliable * * * that Jimmy Rogers and other persons found in said apartment are selling narcotic drugs in the 1st fl. & basement apartment * * * " And, second, the officer stated that he had observed "the premises" on 2 occasions, and had seen a total of 9 "unknown males" and 4 "known male addicts" enter the "premises." The question presented to us, therefore, is whether these statements, considered alone or in conjunction with one another, afford a "substantial basis" for the magistrate's finding of probable cause.

### 1. *The Informant's Report*

■ ■ We consider first Gowski's hearsay statement that an informant had reported that narcotics were being sold in Rogers' apartment. Preliminarily, it should be noted that we recognize the rule that a hearsay statement alone may be sufficient to establish probable cause for the issuance of a warrant. See Aguilar v. State of Texas, 378 U.S. at 114, 84 S.Ct. 1509, 12 L.Ed.2d 723.[10] But, we have also been informed by the Supreme Court that when an affidavit is based on hearsay, it must be shored up by some additional support before there can be a finding of probable cause:

[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the

---

9. Supra, note 1.

10. "While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that "the term 'probable cause' * * * means less than evidence which would justify condemnation," Locke

v. United States, 7 Cranch 339, 348, and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. *Draper* v. *United States*, 358 U.S. 307, 311." United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was "credible" or his information "reliable." Ibid. (Footnote omitted.)[11]

Rogers does not claim that the affidavit in this case failed to comply with the latter half of this double-barreled requirement. Gowski stated that the informant had previously supplied information that led to the arrest and conviction of 3 persons. Such a statement, we believe, sufficiently apprised the magistrate of the underlying circumstances upon which the officer concluded that his source of information was reliable. See Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

Rogers does argue vigorously, however, that Gowski's affidavit was deficient because it failed to inform the issuing judge of the "underlying circumstances" from which the informant concluded that narcotics were being sold in the apartment. We agree with this contention. Gowski's affidavit suffered from the same fatal flaw that was present in *Aguilar*—it did not contain a statement that the informant spoke from personal knowledge when he reported that Rogers was selling drugs in his apartment, nor was any information presented from which the magistrate might properly have inferred that this was so. In fact, the affidavit is totally devoid of *any* of the underlying circumstances upon which the informant's belief was grounded. Even in cases involving non-

hearsay affidavits, the affiant's "mere affirmance of belief or suspicion is not enough" to create probable cause. United States v. Nathanson, 290 U.S. 41, 47, 64 S.Ct. 11 (1933). A *fortiori*, it is not sufficient for the affiant merely to state that his informant has "a belief" or a "suspicion," without informing the magistrate of some of the underlying circumstances that support that belief. See Jones v. United States, 362 U.S. at 269, 80 S.Ct. 725, 4 L.Ed.2d 697. Were the law otherwise, the rule established in *Nathanson*, that mere suspicion or belief by the affiant is not sufficient, could be easily circumvented by having the suspicion communicated to another who would then submit an affidavit stating that a reliable informant believes that narcotics will be found if a search is conducted. Therefore, Gowski's mere statement, without more, that an informer had reported that drugs were being sold in Rogers' apartment, could not by itself have created probable cause for the issuance of a search warrant.

Since we are dealing with one of the mistiest areas in the law, it might be of some interest to compare Gowski's affidavit with that examined by the Supreme Court in the *Rugendorf* case. The state relies on this case as supporting its position that probable cause was present here. In *Rugendorf*, the FBI agent, who obtained the search warrant, stated in his affidavit to the issuing magistrate that he had probable cause to believe that stolen furs would be found in defendant's home because: 1. a reliable informer had actually seen the furs there; 2. another reliable informer had named the individuals who had stolen the furs, and

---

11. The Supreme Court has only recently held that where probable cause for a warrantless arrest and search is provided by a tip from a reliable informant, neither the Sixth nor the Fourteenth Amendment prohibits a judge, in the exercise of his sound discretion, from refusing to require that the informant's identity be revealed at a suppression hearing. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Similarly, the Court has refused to impose an absolute rule of disclosure even at federal criminal trials. See Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Court has, however, granted certiorari to consider whether the failure by a state and its informant to reveal the latter's name *when he testified* against a criminal defendant at trial violates the Sixth Amendment right of confrontation. Smith v. Ill., 70 Ill.App. 2d 289, 217 N.E.2d 546, cert. granted U.S.L.Week 3401 (U. S. May 15, 1967).

a police officer had seen the defendant with one of the alleged robbers; 3. a third reliable informer had stated that the defendant had previously acted as a "fence" for the thieves who were involved. The Supreme Court concluded that these hearsay statements provided a substantial basis for the Commissioner to conclude that there was probable cause to believe that the stolen furs would be found in the defendant's home.

But, the several specific and factual statements contained in the *Rugendorf* affidavit contrast sharply with the unsubstantiated and conclusory statement in Gowski's affidavit that an informer told him "that Jimmy Rogers and other persons * * * are selling narcotics." It should be noted particularly, that while one of the informers in *Rugendorf* had actually seen the stolen furs in the defendant's home, there is not a hint in the present affidavit that the informant had seen any trafficking in narcotics taking place in Rogers' apartment. It is difficult for us to understand, therefore, the basis for the inference drawn by the Appellate Division and the New York Court of Appeals that the informant spoke of what he had seen, for the "deficiencies [in the affidavit] could not be cured by the * * * reliance upon a presumption that the complaint was made on the personal knowledge of the [informant]." Giordenello v. United States, 357 U.S. at 486, 78 S.Ct. at 1250. In sum, the affidavit in *Rugendorf* and that in the present case differ *toto caelo*.[12]

▆▆ In concluding that the portion of Gowski's affidavit relating to the information provided by the informant did not give the judge probable cause to issue the warrant, we are not unmindful of the fact that the Fourth Amendment requirements are practical, rather than abstract, and therefore affidavits must be construed in a common sense, realistic and non-hypertechnical fashion. See United States v. Ventresca, 380 U.S. at 108, 85 S.Ct. at 746.

[But] [t]his is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. See Aguilar v. State of Texas, supra. *Recital of some of the underlying circumstances in the affidavit is essential* if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. Id. at 108–109, 85 S.Ct. at 746. (Emphasis added.)

As we have noted, the informant's statement that narcotics were being sold in Rogers' apartment was purely conclusory; no underlying facts were given to support his belief. From so much of Gowski's affidavit, therefore, the magistrate could not as a matter of law have made an independent finding that there was probable cause.

### 2. *The Affiant's Surveillance*

▆▆ Thus, we must direct our attention to Gowski's statement relating to his surveillance, to see if it provides a bolstering basis for the magistrate's finding of probable cause. In the *Aguilar* case, supra, where the only facts in the officer's affidavit related to information given to him by an informant, the state attempted to prove probable cause by claiming that there had also been a surveillance of the defendant's house. But, since the magistrate had not been informed of that surveillance, the Court refused to consider it in determining whether there had been probable cause. The Supreme Court noted, however, that "[i]f the fact and results of such a surveillance had been appropriately pre-

---

12. There is also a marked difference between Gowski's affidavit and that sustained by the Supreme Court in Jones v. United States, supra. There the affiant stated that his informant had on many occasions gone to the defendant's apartment and purchased drugs. In fact, the informant told the officers exactly where the narcotics were hidden in the apartment.

sented to the magistrate, this would, of course, present an entirely different case." 378 U.S. at 109 n. 1, 84 S.Ct. at 1511. It would have been "an entirely different case" because the Court, in determining whether there had been probable cause, could then have considered the facts which the surveillance had uncovered. We do not, however, read the Court's language to mean that whenever a surveillance is conducted, it will *ipso facto* serve to corroborate the otherwise insufficient hearsay conclusions of an informant regardless of how indefinite or unsound the surveillance may be. We believe that the only feasible interpretation of the Supreme Court's language is that the facts disclosed by a surveillance and presented to the magistrate must be independently analyzed by him in order that he can determine whether, standing alone, or when considered with hearsay information in the affidavit, they support a finding of probable cause.

At this point it would be helpful to re-examine the key paragraph in Gowski's affidavit dealing with his surveillance.

2. I have information based upon confidental information * * * that Jimmy Rogers and other persons found in said *apartment* are selling narcotic drugs in the 1st fl. & basement *apartment* of *premises* 191 Quincy St., Brooklyn, N. Y. Observations by the deponent of the *premises* on Thursday, January 10, 1963, between the hours of 8:00 and 9:00 P.M. five unknown males and two known male addicts were seen entering the *premises;* on January 11th, 1963, from 9:00 to 11:00 A.M. four unknown males and two known male addicts.

By reason of the aforesaid the deponent has probable cause to believe that narcotic drugs and paraphernalia commonly used by drug sellers and addicts may be found at the aforesaid *premises* and upon the persons found therein. (Emphasis added.)

Since it is apparent that Rogers lived in an "apartment" building, it is obscure, vague and at the very least equivocal whether Gowski actually observed the unknown males and known addicts entering Rogers' "apartment," or whether he merely saw them entering the "premises," meaning the apartment building at 191 Quincy Street. If he meant the former, that observation might by itself have been sufficient to sustain a finding of probable cause had he made that clear. But, if Gowski merely saw the unknown males and known addicts entering the *building* where Rogers lived, but did not see them going into his *apartment*, it is quite clear that his observation would not have provided probable cause for the issuance of a warrant. Certainly, it could not be argued that the police could obtain search warrants for every apartment in a building merely because they had seen addicts going in and out of the building. We have been told most recently by the Supreme Court that in a criminal investigation, such as the present one, the public interest does not "justify a sweeping search of an entire city conducted in the hope that [stolen or contraband goods] might be found. Consequently, a search for these goods, even with a warrant, is 'reasonable' only when there is 'probable cause' to believe that they will be uncovered in a particular dwelling." Camara v. Municipal Court, supra, 87 S.Ct. at 1734. (Emphasis added.)[13]

13. Of course, we have intended to make clear in our opinion that a court cannot paint with a broad brush in the area of the Fourth Amendment. The facts of a particular case are vital, and indeed, decisive. For example, the Supreme Court in the *Camara* case, also informed us that where inspections are conducted to enforce a health or building code, though a warrant is necessary, save in emergency circumstances, the inspector seeking the warrant need not show "probable cause to believe that a particular dwelling contains violations of the minimum standards prescribed by the code being enforced." Ibid. This is so because such inspections, unlike searches conducted as part of a criminal investigation, are designed for the legitimate purpose of insuring citywide compliance with specific minimum standards for the maintenance of private property. Such compliance may require the periodic inspection of *all* buildings, and therefore an inspection of a wide

It is instructive to compare Gowski's affidavit with one examined by the Supreme Court in still another case upon which the state relies heavily. In United States v. Ventresca, supra, the affidavit presented to the magistrate stated that the affiant and other officers on 5 separate occasions observed cars with large bags of sugar entering the yard of the house under surveillance. Not only did they see cars being loaded at the building, but on 3 occasions they smelled the odor of fermenting mash emanating from the house. The officers also saw large metal cans being brought into the building and heard the sound of a pump or motor coming from within. The problems connected with the surveillance of a multi-dwelling building were simply not involved in *Ventresca,* since the officers had been watching a one-family residence. Based on their detailed observations, and in view of the fact that surveillance of a one-family house was involved, there was little question but that probable cause existed to believe that the occupants were operating an illegal still.

It can be argued, of course, that when Gowski stated that he had observed the "premises," he was really talking about the "apartment." [14] We recognize that affidavits are often hastily drawn and that we cannot expect a police officer to draft an affidavit with the skill and precision of a lawyer. As we have already stated, we agree with our dissenting brother that a court should avoid interpreting an affidavit for a warrant in a "hypertechnical" manner. Nevertheless, the simple fact remains that from the affidavit before us, neither we nor the magistrate who issued the warrant could be reasonably certain what it was that the officers observed, and there is nothing to indicate that the magistrate attempted to make any inquiries to resolve the ambiguity that existed.[15] When rights as fundamental as those protected by the Fourth Amendment are at stake we must be wary of drawing flimsy inferences that will permit erosion of these rights.

## IV. *Conclusion*

A court is always loath to issue a writ of habeas corpus when it is clear that the defendant is guilty of the crime charged. This is particularly true of a federal court when the state appellate process has been invoked. But cases such as the present one involve issues that far transcend the question of one man's guilt or innocence. That a guilty person may on occasion go unpunished is the price we must pay to be assured that the Fourth Amendment's guarantee against unreasonable searches and seizures is not a sham or simulacrum. The right of the innocent citizen to be free from searches and seizures unless there is probable cause for a warrant can be protected only by guaranteeing to his guilty neighbor that before his home may be searched, the officer seeking the warrant must demonstrate to the magistrate that a crime will probably be found occurring at the place "particularly [de-

area may be reasonable. If the facts reveal that "a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." 87 S.Ct. at 1736.

14. Indeed, it would be more reasonable to suppose that a detective engaged in surveillance would not station himself in juxtaposition to the "apartment," for this would quickly expose him to those under suspicion. It is more likely that an experienced policeman would have been observing "the premises." And when surveilling a multi-apartment building it is impossible to conclude with any reason- able degree of certainty that "known addicts" entering "the premises," were all heading for Rogers' apartment and none other.

15. There is, of course, no reason to remand the case for a determination of what Gowski meant when he stated that unknown males and known addicts were seen entering the "premises." The question before us is whether the magistrate could have found probable cause at the time he issued the warrant, and therefore, as we noted previously, we can only consider the information that was actually before him at that time.

scribed] * * * to be searched." U.S. Const. amend. IV. And certainly it is too late to advocate that a search can be justified by the fruit it produces, for if that is the law the discredited maxim that the end justifies the means will be given official sanction.[16]

Order reversed and case remanded to the District Court for issuance of the writ of habeas corpus.

HAYS, Circuit Judge (dissenting):

With respect I must dissent. My brethren seem to me to be doing exactly what the Supreme Court said they should not do, to wit, "invalidate the warrant by interpreting the affidavit in a hyper-technical, rather than a commonsense, manner." United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746 (1965). See also United States v. Free-man, 358 F.2d 459 (2d Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 168 (1966). The warrant here was based upon the affidavit of a police detective who swore that he had been told by an informant of known reliability that narcotics were being sold at a certain address, that he took up a sur-veillance post outside the "premises" reported by the informant to be the scene of narcotics sales, and that within a short period of time he observed an un-usually large number of persons entering the premises including four known to him to be drug addicts. What could be more "hypertechnical" than to reject this affidavit because the detective failed to state expressly that the apart-ment referred to by the informant was the "premises" which he was watching?

Petition for Rehearing.

PER CURIAM:

In its petition for rehearing the state has presented us with several contentions which unfortunately it withheld on the appeal. Thus, for the first time, we are now provided with a description of the physical layout of the building in which Rogers lived; if accurate, this *might* indicate that Gowski actually saw the known addicts and unknown males enter-ing the appellant's "apartment," some-thing we were not told before.

We should note, however, as we tried to indicate in our opinion, that this infor-mation really has no relevance to the is-sue of probable cause unless it appears that it was brought to the attention of the magistrate at the time he issued the warrant, for we can only consider what was before him. But, the state tells us that the magistrate *might* have been fa-miliar with the type of buildings in the neighborhood where Rogers lived, or he *might* have questioned Gowski to deter-mine exactly what he had observed. Moreover, it claims that the magistrate *might* have inquired as to the basis for the informant's statement that narcotics would be found in Rogers' apartment. Because all this is conceivable, the state urges that once we determined that ap-pellant had the right to present his con-stitutional claims to a federal court, we should have remanded the case to the District Court for a determination of the factual issues involved.

The state is to be faulted for having held back these facts and points raised so belatedly. Almost half of the lengthy

---

16. We note that in view of the Supreme Court's recent holding that the Fourth Amendment does not prohibit an other-wise permissible search because it is con-ducted for the purpose of obtaining "mere evidence," it is important for appellate courts to scrutinize carefully a magis-trate's conclusion that probable cause ex-isted for the search. As the Court noted:

But if * * * rejection [of the mere evidence rule] does enlarge the area of permissible searches, the intru-

sions are nevertheless made after ful-filling the probable cause and particu-larity of the Fourth Amendment and after the intervention of a "neutral and detached magistrate * * *." John-son v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436.

Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 294. See also Berger v. New York, 387 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

brief submitted by Rogers on appeal was devoted to the issue of probable cause. Yet the state in replying to that brief never so much as suggested that the magistrate's determination of probable cause was based on anything but Gowski's affidavit. We were given to believe by the state's silence on this question that there were no factual issues, for "there is nothing to indicate that the magistrate attempted to make any inquiries to resolve the ambiguity that existed [in Gowski's affidavit]." United States ex rel. Rogers v. Warden, 381 F.2d 220 (2d Cir., June 15, 1967) (footnote omitted).

■ This Court had occasion once before to instruct the Attorney General of New York that "the exigencies of habeas corpus * * * make it desirable for a state to indicate, in any submission asking dismissal as a matter of law, the proceedings to which it deems itself entitled if its request should be denied." United States ex rel. Mitchell v. Follette, 358 F.2d 922, 929 (1966). In view of the events that have transpired in the present case, and the unnecessary drain on our time which resulted from this action by the state, we wish to make it clear that in the future it will be not only "desirable," but mandatory for the state to inform this Court of its views of the merits of a petitioner's claim, and the further proceedings it believes to be appropriate in the event this Court denies its prayer for a dismissal of the petition as a matter of law.

■ We have determined, however, to remand to the District Court in order that it may ascertain whether the magistrate acted on any information other than that contained in Gowski's affidavit; and if so, whether he might properly have found probable cause to issue the warrant.

We wish to make it clear that our remand in no way affects our holding regarding the right of a defendant to raise his Fourth Amendment claims in a federal habeas corpus proceeding after he has pleaded guilty and appealed pursuant to § 813–c of the New York Code of Criminal Procedure. We have considered the other arguments raised by the state and find them to be without merit.

The petition for reargument is granted. The previous order to issue the writ of habeas corpus is rescinded and the case is remanded to the District Court for further proceedings.

HAYS, Circuit Judge: I concur in the result.