UNITED STATES of America ex rel.
John J. MOLLOY, Relator-Appellant,

v.

Harold W. FOLLETTE, Warden of Green
Haven Prison, Stormville, New York,
Respondent-Appellee.

No. 232, Docket 31840.

United States Court of Appeals
Second Circuit.

Argued Dec. 6, 1967.

Decided Feb. 27, 1968.

C. Dickerman Williams, New York
City, for relator-appellant.

Brenda Soloff, Asst. Atty. Gen. (Louis
J. Lefkowitz, Atty. Gen., State of New
York; Samuel A. Hirshowitz, First
Asst. Atty. Gen., on brief), for respond-
ent-appellee.

Before LUMBARD, Chief Judge, and
WATERMAN and FRIENDLY, Circuit
Judges.

FRIENDLY, Circuit Judge.

John J. Molloy was charged by the
State of New York with attempted grand
larceny of an automobile. He moved for
the suppression of the automobile regis-
tration card found upon his person as a
result of an allegedly illegal search. The
Supreme Court, Queens County, denied
the motion. Molloy then pleaded guilty
and was convicted and sentenced. De-
spite this, as permitted by the final para-
graph of § 813–c of the New York Code
of Criminal Procedure, he pressed the
issue of illegal search by an appeal. The
Appellate Division affirmed in a memo-
randum, 22 A.D.2d 814, 254 N.Y.S.2d 769
(2d Dept. 1964), and was affirmed by
the Court of Appeals, 17 N.Y.2d 431, 266
N.Y.S.2d 520, 213 N.E.2d 801 (1965).

Molloy then sought a writ of habeas
corpus in the District Court for the
Southern District of New York. Taking
note of the State's contention that such
relief was precluded by Molloy's guilty
plea, an issue then before this court and
subsequently decided against the State,
United States ex rel. Rogers v. Warden
of Attica State Prison, 381 F.2d 209 (2
Cir. 1967), the district judge ruled
against Molloy on the merits, on the basis

of the record in the State suppression hearing. This appeal followed.

Before discussing Molloy's complaint we must deal with the Attorney General's earnest contention that we should affirm on the ground that *Rogers* was wrongly decided or, more accurately, that we should seek the convocation of the court *in banc* to pass upon that issue.[1] If we disagreed with *Rogers*, we would follow the latter course since the question is of large consequence both to the State of New York and to the federal courts. But we do not.

█ There is some initial appeal in the State's argument that habeas corpus tests the legality of custody, that the State's custody of Molloy is pursuant to his conviction on his plea of guilty, that there is no claim that the plea was improperly induced, and that New York's decision to allow a criminal defendant to appeal from a judgment of conviction on the ground of error in a suppression ruling notwithstanding a guilty plea goes beyond the requirements of the Constitution and should not enlarge a prisoner's right to federal habeas corpus.[2] But acceptance of the State's contention would make the final paragraph of § 813-c a trap rather than the beneficent and "enlightened statute," 381 F.2d at 214, it was meant to be. While in strict letter New York has said only that a plea of guilty will not foreclose *appeal* from the denial of a motion to suppress, defendants and their counsel would scarcely read the statute so narrowly; the natural interpretation would be rather that they might plead guilty and still preserve all remedies with respect to the alleged unlawful search that would otherwise have been available—including ultimate resort to a federal court. What the result

should be if New York were to say in so many words that the sole remedy with respect to an illegal search preserved on a plea of guilty was by an appeal or other remedies in the state system, we are not now required to decide.

The record of the state suppression hearing consists solely of the testimony of Detective Gagliardi. Being assigned to radio motor patrol in Brooklyn on the night shift of November 21, 1962, he received a call to proceed to 871 Flatbush Ave. "where there were prowlers." He saw—from somewhere—Molloy ·on the roof of 12 Martense St., 100' north of 871 Flatbush Ave. Somehow Gagliardi got to the roof of 12 Martense St. and asked Molloy what he was doing there. Molloy responded that he had had a fight on the street, and, to get away from his assailants, had gone to the roof "to find a place to sleep." Finding this explanation not wholly convincing, Gagliardi "took him * * * down into the street" and questioned him again. When this produced the same answers, Gagliardi placed Molloy under arrest, searched him and seized a registration for a 1957 Oldsmobile with plates numbered AD 5717. He then "searched the area and found one John Herbert Smith secreted under the front dashboard of an automobile parked in front of 12 Martense Street," with license plates of the same number.[3]

█ If Detective Gagliardi had reasonable cause to believe that a felony had been committed at 12 Martense St., 871 Flatbush Ave., or elsewhere in the neighborhood, at least if there was possible access between the locus of the crime and the place where Molloy was found, Molloy's presence on a roof top and his absurd explanation gave sufficient reason for believing he had committed the crime

---

1. The State points out that it sought rehearing *in banc* in *Rogers*, but that consideration of its request was aborted when the panel, sustaining an alternative contention, remanded for further consideration on the merits.

2. We do not indicate any view on how far a plea of guilty forecloses an attack on the basis that it was motivated or in ef-

fect compelled by prior violations of a defendant's constitutional rights, an issue that is expected to be further considered by this court in United States ex rel. Richardson v. McMann, Docket No. 31402, Calendar No. 371.

3. It was later found that the plates did not belong to the car.

to justify his arrest. Being on a roof in what we take to have been an early November morning is quite different from what were considered the benign circumstances in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). But the initial "if" is where the state record is rather deficient. In contrast to United States ex rel. McCullers v. McMann, 370 F.2d 757 (2 Cir. 1967), where the trial transcript showed a report of burglary of a particular store at a specified time, both near the place where and time when McCullers was found, here the record discloses only that Gagliardi had been told of "prowlers in the vicinity" and the vague statement "I was investigating a burglary." The State should have an opportunity to cure this deficiency, e. g., by furnishing further evidence of what burglary had been reported and where and when, and the physical relation of the locus to 12 Martense St.[4]

We therefore vacate the order and direct a hearing consistent with this opinion. The court's thanks go to C. Dickerman Williams, Esq., for his concise and effective presentation as assigned counsel on Molloy's behalf.

---

4. The State does not seek to uphold the search as a "frisk."