488 F.2d 245
 Thomas Richard MANN, Petitioner-Appellant,
v.
Stewart C. SMITH, Chief Probation Officer, San Bernardino
County, and Lowell E. Lathrop, District Attorney,
San Bernardino County, Respondents-Appellees.
 No. 71-1932.
 United States Court of Appeals,
Ninth Circuit.
 July 9, 1973.
Rehearing Denied Nov. 15, 1973.
Certiorari Denied Feb. 19, 1974.
See 94 S.Ct. 1445.
 
 Robert F. Mann, (argued), of Gilbert, Mann & Sarno, Santa Monica, Cal., for petitioner-appellant.
 Russell Iungerich, Deputy Atty. Gen. (argued), Evelle J. Younger, Atty. Gen., Daniel W. McGovern, Deputy Atty. Gen., Los Angeles, Cal., Lowell E. Lathrop, Dist. Atty., San Bernardino, Cal., for respondents-appellees.
 Before BARNES and WALLACE, Circuit Judges, and ENRIGHT,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 The State of California charged Mann with possessing marijuana and maintaining a place for use of narcotics (Cal.Health & Safety Code Secs. 11530, 11557). He pleaded not guilty and moved to suppress the marijuana seized at his home, charging violation of his Fourth Amendment rights.
 
 
 2
 His motion was denied after an evidentiary hearing in the state trial court. Mann then sought a writ of mandate directing the trial court to suppress the challenged evidence. This was denied by the Court of Appeal and then by the Supreme Court of California. Mann v. Superior Court, 3 Cal.3d 1, 472 P.2d 468, 88 Cal.Rptr. 380 (1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971).
 
 
 3
 Mann then pleaded guilty to the possession of marijuana count. The state's motion to dismiss the remaining count was granted. One month later, Mann petitioned the United States District Court for a writ of habeas corpus. The denial of that petition is the subject of this appeal. We affirm.
 
 
 4
 Mann again claims a violation of his Fourth Amendment rights. But, having pleaded guilty, he has lost his right to raise this challenge. In Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), the Court stated:
 
 
 5
 We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.
 
 
 6
 The voluntariness and intelligent character of Mann's plea are not here questioned. No other issue remains.
 
 
 7
 The dissent suggests the rule should be different where there is a state procedure, such as in California[1] and New York,[2] which allows a defendant to appeal the denial of his motion to suppress even after a conviction predicated upon a plea of guilty. An analogous question was specifically left open in McMann v. Richardson, 397 U.S. 759, 770 n.13, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Our brothers of the Second Circuit have made such an exception.[3] However, their decision predated Tollett which made no mention of any exceptions.
 
 
 8
 While states may institute various internal procedural rules for testing questions on state appeal, we believe the wise course is to have a uniform rule applicable to all states when federal habeas corpus is requested. While this question was not specifically presented, Tollett states a rule which appears to cover all federal habeas corpus petitioners. We hold that, subsequent to a plea of guilty, there can be no federal collateral attack based upon an alleged violation of constitutional rights occurring prior to the guilty plea.
 
 
 9
 If, in fact, Mann did rely on the erroneous advice of his attorney and believed that he could still raise his constitutional claims subsequent to the guilty plea, he should raise that question by attacking the voluntariness and intelligent character of his plea. Tollett, supra, 411 U.S. at 267, 93 S.Ct. 1602.
 
 
 10
 Affirmed.
 
 ENRIGHT, District Judge (dissenting):
 
 11
 I respectfully dissent.
 
 
 12
 The majority rely upon the following language in Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L. Ed.2d 235 (1973):
 
 
 13
 We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.
 
 
 14
 I am unable to agree with the court's position on the problems posed and the specific issues reserved in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), one of the Brady triology.[1]
 
 In McMann, the court wrote:
 
 15
 A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged. [Citations omitted.] That admission may not be compelled, and since the plea is also a waiver of trial-and unless the applicable law otherwise provides,[11] a waiver of the right to contest the admissiblity of any evidence the state might have offered against the defendant-it must be an intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S., at 748, 90 S. Ct., at 1469. . . .
 
 
 16
 397 U.S. at 766, 90 S.Ct. at 1446 (emphasis added).
 
 The accompanying footnote reads:
 
 17
 11. New York law now permits a defendant to challenge the admissibility of a confession in a pre-trial hearing and to appeal from an adverse ruling on the admissibility of the confession even if the conviction is based on a plea of guilty. N.Y.Code Crim.Proc. Sec. 813-g (Supp.1969) (effective July 16, 1965). A similar provision permits a defendant to appeal an adverse ruling on a Fourth Amendment claim after a plea of guilty. N.Y.Code Crim.Proc. Sec. 813-c (Supp.1969) (effective April 29, 1962).
 
 
 18
 Id. n.11 (emphasis added).
 
 The McMann court also wrote that
 
 19
 13. We do not here consider whether a conviction, based on a plea of guilty entered in a State permitting the defendant pleading guilty to challenge on appeal the admissibility of his confession (as in New York after July 16, 1965, see n.11, supra), would be open to attack in federal habeas corpus proceedings on the grounds that the confession was coerced. Cf. United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (C. A.2d Cir. 1967).
 
 
 20
 Id. at 770, 90 S.Ct. at 1448, n.13.
 
 
 21
 In United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2d Cir. 1967), the Second Circuit held that under the criminal statutory scheme of New York, following an unsuccessful motion to suppress evidence, a defendant, by pleading guilty, does not thereby forfeit his right to apply for federal habeas corpus relief should his state appeal prove unsuccessful.[2]
 
 
 22
 Since the California Penal Code Sec. 1538.5(m) (West Supp.1973)[3] provides a similar statutory scheme, I would hold as had the Second Circuit that petitioner should not be deprived of federal habeas corpus relief.[4]
 
 
 23
 The California procedure encourages competent counsel to resolve all else but the legal issues specifically reserved for precisely the reasons advanced in United States ex rel. Rogers v. Warden of Attica State Prison. Its purpose is to negate the very relinquishment of which Tollett speaks. This statutory scheme does not waive the petitioner's rights, as the majority suggests Tollett mandates, but was specially enacted to preserve those rights-and preserved they were by the petitioner's adherence to the procedures outlined in Sec. 1538.5(m). Hence, based on the Brady trilogy itself, Tollett cannot be considered persuasive authority as to the petitioner's claim. The competence of counsel discussed in Tollett is clearly not applicable here; any competent California attorney would assure his client that he had specifically reserved (as here) by his plea that which the majority now holds as a matter of law, he has forever and affirmatively waived by that very same plea. The rationale of Tollett should not, therefore, be used on a procedural basis as authority for disposing of the substantive claim herein involved.
 
 
 24
 On the merits of the petition, I would reverse the judgment of the district court and would concur in the dissenting opinion filed by Justice Peters in Mann v. Superior Court, 3 C.3d 1, 88 Cal.Rptr. 380, 472 P.2d 468 (1970). Police, while engaged in the investigation of a private party in the home of a school teacher, first, came upon the petitioner's property and surveyed the interior while standing between bushes and a window,[5] and thereafter, entered the petitioner's premises following closely behind invited guests. (Unknown voices answered "come in," in response to a knock.) Serious issues as to probable cause and the validity of consent were raised by the petitioner. A small quantity of marijuana was found inside the residence and all persons present were arrested. Admittedly and concededly, the officers were without lawful probable cause at the time they approached the front door, and by the only prosecution testimony offered, specifically eliminated the odor of marijuana (which was detected when they entered the residence), as any factor in the probable cause for the subsequent arrests.[6] The consent issue was crucial to the resolution of the violations alleged.
 
 
 25
 Certainly the facts of this case are subject to the interpretation that the only tenable opportunity remaining open to the officers in retrieving a tainted situation was to finesse a constitutional violation and construe a simple knock with the expected "come in," voiced by persons who could only reasonably anticipate other guests, and certainly not governmental agencies, into a consent which would permit the blanket arrests and a comprehensive search of the premises.[7] To torture such wording into a knowing and intelligent waiver of such a fundamental constitutional right by the householder does a disservice to elemental justice, given the totality of circumstances.[8] It would seem that there should have been some attempt on the part of the officers, knowing as they did their own purpose and intent, to announce their identity prior to seeking consent to enter onto the premises as envisioned in the underlying rationale of California Penal Code Sec. 844 (West 1970).[9] The essence of the fourth amendment would seem to require no less. These were officers about to execute a mass arrest without any attempt to seek or comply with any legal process, and indeed their initial activity flew in the face of the constitutional mandate. I would, therefore, hold that the constitutional rights assured to the petitioner by the fourth and fourteenth amendments were violated. I would remand the matter to the district court with instructions to grant the petition.
 
 
 
 *
 Honorable William B. Enright, United States District Judge, San Diego, California, sitting by designation
 
 
 [1]
 Cal.Penal Code Sec. 1538.5(m) (West 1970). It is questionable whether Mann was availing himself of this procedure. He did not plead guilty with the expectation of appealing to the state court. Rather, he pleaded not guilty and petitioned for a writ of mandate based upon the denial of his motion to suppress. It was denied by the California appellate courts and the United States Supreme Court denied certiorari. Then, he pleaded guilty
 Apparently a plea bargain was made in which Mann entered his plea in exchange for the dismissal of one count of the two-count indictment. This would be more consistent with a relinquishment of his Fourth Amendment claims than an attempt to preserve them. See Tollett, supra, 411 U.S. at 267, 93 S.Ct. 1602.
 
 
 [2]
 N.Y.Code Crim.Proc. Sec. 813-c (Supp. 1969)
 
 
 [3]
 United States ex rel. Rogers v. Warden, 381 F.2d 209 (2d Cir. 1967); United States ex rel. Molloy v. Follette, 391 F.2d 231 (2d Cir.), cert. denied, 391 U.S. 917, 88 S.Ct. 1812, 20 L.Ed.2d 658 (1968). We have heretofore entertained a federal habeas corpus petition subsequent to a plea of guilty in a California state court. Houser v. Geary, 465 F.2d 193 (9th Cir. 1972), cert. denied, 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973). However, we did not discuss the point at issue here and the case was decided prior to the direction of the Court in Tollett
 
 
 [1]
 Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)
 
 
 [2]
 The rationale of the Second Circuit was as follows:
 New York has thus provided a specific statutory exception to the general rule that a plea of guilty bars a defendant from raising on appeal alleged nonjurisdictional defects. And, we are quite easily able to discern legitimate and powerfully compelling reasons for establishing such an exception. In the greater number of cases, the present one being illustrative, a defendant in a criminal case recognizes that unless he succeeds in suppressing the evidence seized, the state will have little difficulty in proving the charges filed against him. A defendant may well have no desire to go to trial once his pre-trial suppression motion has been denied, and thereafter may lose heart for any defense to the charges. If, however, the defendant is confronted with state law which decrees that a plea of guilty bars him from appealing the denial of his motion, then he will be presented with a fait accompli and be forced to proceed to trial just so that he can preserve his right to appeal. Section 813-c is an enlightened statute and was designed to alleviate this undesirable and archaic end which can only result in cluttering trial calendars. The guilty plea in such circumstances is merely a procedural step which permits review of the defendant's constitutional claims without the necessity of a trial that would be a waste of time, money and manpower.
 381 F.2d at 214.
 
 
 [3]
 Cal.Pen.Code Sec. 1538.5(m) provides in part: "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty."
 
 
 [4]
 I also concur with the language of the Second Circuit in reaffirming the principle enunciated in United States ex rel. Rogers v. Warden of Attica State Prison:
 There is some initial appeal in the State's argument that habeas corpus tests the legality of custody, that the State's custody of Molloy is pursuant to his conviction on his plea of guilty, that there is no claim that the plea was improperly induced, and that New York's decision to allow a criminal defendant to appeal from a judgment of conviction on the ground of error in a suppression ruling notwithstanding a guilty plea goes beyond the requirements of the Constitution and should not enlarge a prisoner's right to federal habeas corpus. [Footnote omitted.] But acceptance of the State's contention would make the final paragraph of Sec. 813-c a trap rather than the beneficient and "enlightened statute," 381 F.2d at 214, it was meant to be. While in strict letter New York has said only that a plea of guilty will not foreclose appeal from the denial of a motion to suppress, defendants and their counsel would scarcely read the statute so narrowly; the natural interpretation would be rather that they might plead guilty and still preserve all remedies with respect to the alleged unlawful search that would otherwise have been available-including ultimate resort to a federal court. What the result should be if New York were to say in so many words that the sole remedy with respect to an illegal search preserved on a plea of guilty was by an appeal or other remedies in the state system, we are not now required to decide.
 United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir. 1968) (emphasis original).
 
 
 [5]
 Compare Lorenzana v. Superior Court of Los Angeles County, 9 Cal.3d 626, 511 P.2d 33, 108 Cal.Rptr. 585 (1973)
 
 
 [6]
 "Q. [by defense counsel] As you were knocking on the door, at that time you intended to arrest all the occupants of that house except the three which you followed in, is that correct? A. [by Lieutenant Olmos] Correct. Q. And you had reached that conclusion after seeing what you saw in the window? A. That is correct. Q. And, therefore, when you walked into the house and smelled the odor of marijuana, that certainly did not contribute to your conclusion in that regard, is that correct? A. Just confirmed my suspicions. Q. But it was an element, as far as you are concerned, of reaching that particular conclusion? A. No sir. Q. I beg your pardon? A. No, sir."
 Mann v. Superior Court, 3 Cal.3d at 13, 88 Cal.Rptr. at 387, 472 P.2d at 475 (1970) (Peters, J. dissenting).
 
 
 [7]
 The search was prior to the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)
 
 
 [8]
 Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2047-2048, 36 L.Ed.2d 854 (1973); Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L. Ed.2d 797 (1968); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)
 
 
 [9]
 Cal.Pen.Code Sec. 844 provides:
 To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.