UNITED STATES ex rel. Ronald J. SADNESS, Petitioner-Appellee,

v.

Walter H. WILKINS, as Warden of Attica State Prison, Respondent-Appellant.

No. 395, Docket 27411.

United States Court of Appeals Second Circuit.

Submitted June 15, 1962.

Decided Jan. 29, 1963.

Ronald J. Sadness, petitioner-appellee, pro se.

Anthony F. Marra, New York City (Leon B. Polsky, New York City, of counsel), Legal Aid Society, amicus curiae for petitioner-appellee.

Louis J. Lefkowitz, Atty. Gen., of the State of N. Y. (on the brief), (Joseph J. Rose, Asst. Atty. Gen., of counsel), for respondent-appellant.

Before LUMBARD, Chief Judge, and SMITH and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

On June 8, 1961, the relator-appellee, Ronald J. Sadness, petitioned the United States District Court for the Western District of New York for a writ of habeas corpus, alleging the invalidity of his 1940 conviction as a second felony offender and seeking release from the custody of the warden of the Attica State Prison.

The District Court, Henderson, J., after determining that the petitioner had exhausted his state remedies, took jurisdiction of the petition under 28 U.S.C. §§ 2241 and 2254. Hearings were held, and on December 29, 1961 the District Court sustained the writ and ruled that Sadness' conviction was invalid because his "assigned counsel failed to represent [him] in a competent manner." The District Court ordered that the petitioner be remanded to the custody of state officials for further proceedings under the 1940 indictment. On May 29, 1962 this Court granted the State's application for a certificate of probable cause pursuant to 28 U.S.C. § 2253.

■ After the case had been taken on submission, we were advised that Sadness had been released on parole, raising the question under the existing precedents of whether the cause had thereby become moot. Because that question was pending before the United States Supreme Court in a case identical in all important respects to this one, we reserved decision until the Court might have an opportunity to speak. Its opinion in Jones v. Cunningham, 83 S.Ct. 373 (1963), now makes clear that a prisoner who is released upon parole remains "in custody" within the meaning of federal habeas corpus jurisdiction, 28 U.S.C. § 2241, and that release upon parole does not render moot an appeal from a habeas corpus proceeding conducted prior to release.[1] We accordingly proceed to the merits.

The facts and circumstances relating to Sadness' 1940 conviction appear at length in the transcript of the habeas corpus hearing. They are essential to an understanding of the central issue presented by this appeal: whether Sadness received competent legal representation at the time of his conviction.

Sadness was brought before the New York Supreme Court for Ulster County on March 18, 1940, upon an indictment for grand larceny in the first degree. The case was subsequently transferred to the Ulster County Court and the judge of that court assigned James G. Connelly as counsel for Sadness. Connelly had been admitted to the bar three years prior to his assignment; during that period he had practiced law, including criminal law, privately and had served as an assistant district attorney for four or five months. The District Court at the habeas corpus hearing made a finding of fact that Connelly "visited defendant on a number of occasions (approximately four) prior to April 11, 1940 [the date of pleading and sentencing] for the purpose of consulting him with respect to the case." It further made a finding of fact that Connelly had "obtained the consent" of Sadness to enter a plea of guilty to the charge of grand larceny in the first degree.

On April 10, the day before Sadness was scheduled to appear in court, Connelly learned from the District Attorney's office that Sadness would be charged with

being a second felony offender on the basis of a 1937 California conviction for statutory rape. Conviction on such a charge carried a mandatory ten to twenty year sentence. The District Court found that later that same day Connelly informed Sadness that he would be charged as a second felony offender. The District Court also found that Sadness "then denied that he was the same person as the man claimed to have been previously convicted of a felony. Counsel advised relator that the proper course would then be to require the state to prove the previous conviction." Connelly testified that when he entered the courtroom on April 11 to enter a plea of guilty to the charge of grand larceny in the first degree, he expected to deny and was prepared to deny that Sadness had been convicted of a prior felony and to demand that the State meet its burden of proof on that element of the complaint.

After Sadness had pleaded guilty to the charge of grand larceny in the first degree, the District Attorney filed the multiple felony offender information, charging Sadness with having been convicted of statutory rape in California in 1937:

"Mr. Haver [District Attorney]: * * * I wish to advise you at this time you are entitled to a trial of these issues as to the fact of your conviction and whether you are the same individual that was convicted, or you can admit the allegation that you were the individual so convicted.

"Sadness: I admit it.

"Mr. Haver: You admit the conviction?

"Sadness: Yes.

"Mr. Haver: I file the information with the clerk and I move sentence on this defendant as a second offender. I call your Honor's attention to the fact that the provisions of the penal law make it mandatory that the minimum sentence should be at least the maximum for which he could be sentenced for the crime of grand larceny, first degree, and that the maximum must be twice.

"The Court: Mr. Sadness, you have plead [sic] guilty. It becomes my duty, you being a second offender, it is mandatory upon me, at the request of the District Attorney, to give you an indeterminate sentence of from ten to twenty years at Clinton Prison at Dannemora, at hard labor and that is the sentence of the Court."

Thus, immediately before Sadness entered his plea he was told in open court of his right to a trial on the issue of identity. Connelly testified at the habeas corpus hearing that he was "surprised" when Sadness, contrary to expectation, admitted he had been convicted of the prior felony.

■■ The conclusion of the District Judge that the conviction of Sadness was invalid rests specifically upon two findings of fact:

"8. Counsel failed to advise relator that in the event he were found to have been previously convicted of a felony, imposition of an indeterminate sentence of ten to twenty years would be mandatory.

\* \* \* \* \* \*

"11. Although the relator had previously indicated to his attorney that he was not the person so convicted and although his attorney had not advised him of the consequences of a finding that he was such person, assigned counsel made no attempt at that time to interrupt the proceedings in an effort to consult with and advise his client."

We are bound by these findings unless they appear from the record to be clearly erroneous. It is not necessary to disturb these findings, however, to disagree with the conclusion of incompetent representation which the District Court drew from them. Because we hold that the facts as found by the District Court do not warrant the conclusion that Sadness as a matter of law received incompetent representation, we are constrained to reverse the judgment of the District Court

and to order that the writ of habeas corpus be dismissed.

The gravamen of the District Court's finding is that Connelly, as assigned counsel, failed to meet minimum standards of professional competence in his representation of Sadness. The record does not support this reading. Connelly was a lawyer of three years' experience; as part of that experience, he had spent four or five months as an assistant district attorney and he had practiced criminal law privately. The District Court found as facts (1) that Connelly conferred with Sadness approximately four times prior to his court appearance; (2) that he advised Sadness of the pending second felony offender information upon learning of it; (3) that he discussed the charge of the prior conviction with Sadness; and (4) that he advised Sadness, upon his denial that he was the person convicted of the prior felony, to put the State to its proof on that issue. Upon such facts we cannot sustain the District Court's conclusion that Connelly failed to provide Sadness with competent representation.

■ But the District Court also found fault with Connelly because he failed to advise Sadness of the consequences of being sentenced as a second felony offender and because he made no attempt "to interrupt the proceedings in an effort to consult with and advise his client" after Sadness had unexpectedly admitted the prior felony conviction. Even if we accept *arguendo* the District Court's finding that during his discussion with Sadness of the pending second felony offense information Connelly failed to mention that conviction would result in a mandatory ten to twenty year sentence, we are not led to the conclusion that this amounted to a failure to provide competent representation or to a defect that must vitiate the conviction. Once Sadness denied that he had been convicted of the prior felony and had been advised by Connelly to contest the issue of identity, there was no compelling necessity to mention to him explicitly the sentencing consequences of a plea of guilty, a plea which Connelly had no reason to contemplate because Sadness had given him none. Moreover, the fact of identity was peculiarly within the personal knowledge of Sadness; once he had admitted his identity before the court, having already pleaded guilty to grand larceny in the first degree, little remained that Connelly, taken by surprise, could effectively do. It cannot be held as a matter of law that Connelly's conduct in these two respects was unreasonable under the circumstances; this being so, the District Court had no warrant to hold that it amounted to a failure to provide competent representation.

This is not a case in which the defendant did not know the nature and character of the charge to which he was pleading. Nor is it a case in which the defendant was denied or failed to receive the opportunity to speak directly to the court at the time of sentencing, cf. Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), a circumstance which, even had it occurred in federal court where more stringent rules apply, could not be attacked collaterally. See Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Nor, finally, is it a case in which the fact of the defendant's prior conviction is in serious doubt; indeed, Sadness testified to the conviction at the District Court hearing and the District Court's findings accept the prior conviction as a fact.

Reversed, with instructions to dismiss the writ.