316 F.2d 603
 The UNITED STATES of America ex rel. Robert WEBER, Petitioner-Appellee,
v.
PEOPLE OF the STATE OF NEW YORK, Appellant, and Edward M.
Fay, Warden of GreenHaven Prison, Stormville, New
York, Respondent.
 No. 301, Docket 27987.
 United States Court of Appeals Second Circuit.
 Argued April 17, 1963.
Decided May 1, 1963.
 
 Philip Weinberg, New York City (Louis J. Lefkowitz, Atty. Gen., of New York, on the brief), (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Vincent A. Marsicano, Asst. Atty. Gen., of counsel), for appellant.
 Jerome J. Londin, New York City, Harvey P. Dale, New York City, of counsel), for appellee.
 Before SMITH, KAUFMAN and MARSHALL, Circuit Judges.
 MARSHALL, Circuit Judge.
 This is an appeal by the State of New York from an order of the United States District Court for the Southern District of New York, Noonan, J., sustaining a writ of habeas corpus and directing that the petitioner, Robert Weber, be released from the custody of the warden of Green Haven Prison.
 
 
 1
 The record made at the hearing in the District Court establishes the factual background against which Judge Noonan found that Weber's constitutional rights had been violated and that he was entitled to be released. On June 6, 1950, Weber was convicted in the Court of General Sessions, New York County, of robbery in the second degree and was sentenced to serve a term of from five to ten years in state prison. He was received in prison the following day and remained there until September 21, 1953, when he was paroled, with a maximum expiration date of April 26, 1960. The Certificate of Release on Parole which Weber signed at that time imposes a number of conditions upon the parolee; in accepting parole on these conditions, Weber promised, inter alia, 'I will report to my parole officer each and every time I am arrested or questioned by officers of any law enforcement agency and will give all of the facts and circumstances which brought about the arrest or questioning.'
 
 
 2
 Weber remained free on parole until February 25, 1960, when two detectives from the Safe and Loft Squad of the New York City Police Department came to his home at 4:40 a.m., and took him to police headquarters for questioning in connection with an assault and robbery that had taken place during the night. According to him in the course of the admitted to him in the course of the questioning that he had 'taken a couple of pinches' for gambling while on parole. Subsequent investigation revealed that Weber had been arrested for disorderly conduct on December 17, 1955, during a raid on a dice game and later that day had been convicted and fined $2 in Magistrate's Court of the City of New York. At no time had Weber reported his arrest and conviction to the parole authorities.
 
 
 3
 Upon learning of the existence and concealment of this arrest and conviction, Weber's parole officer issued a warrant for his return to prison for violation of parole. On April 20, 1960-- six days before the original expiration date of Weber's sentence-- the Board of Parole, pursuant to 218 of the New York Correction Law, held a hearing at which Weber appeared. After completion of the hearing, the Board ruled that Weber had violated the conditions of his parole as of December 17, 1955, and ordered him held in prison, charged with four years, two months, and twenty-eight days in delinquent time; this time represented the balance of the maximum term for which he had been originally sentenced, calculated from the date of delinquency. The addition of this delinquent time extended the maximum expiration date of Weber's sentence to June 23, 1964.
 
 
 4
 After exhausting his state remedies, Weber filed his petition for a writ of habeas corpus. His primary contention before the District Court, as it had been before the Board of Parole and before the state courts, was that he was not the man arrested and convicted for gambling on December 17, 1955; the man who had been convicted taht day, he argued, had falsely given the police Weber's name, address, and age as his own. Consequently, Weber contended, since he had never been arrested or convicted on the gambling charge, he obviously could have neither admitted the arrest and conviction to the authorities when he was questioned on February 25, 1960, nor concealed their existence from his parole officer at any time prior to that date. This issue of identity is precisely the issue that was before the Board of Parole at the revocation hearing. Because the police did not fingerprint the defendant in the 1955 disorderly conduct proceeding, conclusive proof on the issue of identity was not available to the Board. The Board therefore was compelled to determine whether to give greater weight, on the one hand, to Weber's assertion that he was not the same man who had been convicted, or, on the other hand, to the testimony of a parole officer and a detective that Weber admitted the conviction and to the existence of the conviction record itself. See People ex rel. Weber v. Division of Parole, 212 N.Y.S.2d 761, 764-765 (Sup.Ct.1961). The determination which a Board of Parole reaches in resolving such issues of fact-- as it happened in the present case, adversely to Weber-- may not be made the subject of attack in habeas corpus proceedings in the federal courts absent a demonstration of denial of a constitutional right. Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, L.Ed. 1566 (1935); cf. Freedman v. Looney, 210 F.2d 56 (10 Cir., 1954). No such demonstration was made by Weber, and the District Court was correct in these circumstances in declining to enter upon a consideration of the quantum of proof that was before the Board of Parole. Cf. Lopez v. Madigan, 174 F.Supp. 919 (N.D.Calif.1959); United States ex rel. Delucia v. O'Donovan, 107 F.Supp. 347 (N.D.Ill.1952); Nave v. Bell, 180 F.2d 198 (6 Cir., 1950); Fox v. Sanford, 123 F.2d 334 (5 Cir., 1941); Rogoway v. Warden, 122 F.2d 967 (9 Cir., 1941).
 
 
 5
 Having thus properly put the question of identity to the side, the District Court went on 'to address itself to what it considers the basic point, namely, did the State act with due diligence in declaring petitioner a parole violator as of December, 1955?' The Court found that it did not because 'the Parole Board through its officers should have known, or in fact did know, of the existence of the arrest of this defendant in December 1955, but delayed for one reason or another to retake him into custody.' The Court then had to determine whether this delay of more than four years-- between the time at which the State was found to have learned of Weber's arrest and the time at which it moved to revoke his parole-- was in violation of any of Weber's constitutional rights. Although recognizing that 'the rights granted by the Sixth Amendment (do not) specifically refer to one placed in the limited atmosphere of parole,' Judge Noonan held that 'where, as here, the state knows or should have known of this petitioner's gambling arrest in 1955 (which he denies), and waits more than four years before revoking his parole and then extends the parolee's prison termination date, this court is of the opinion that such is an undue delay within the rationale of this amendment, if not specifically enunciated by it.' Accordingly, the writ was sustained and Weber ordered discharged from custody.
 
 
 6
 The District Court's holding that the State had denied Weber his rights under the Sixth Amendment by failing to act with due diligence in revoking his parole thus rested, in the alternative, either on the finding of fact that the Board of Parole knew of the existence of his conviction in 1955 or on the conclusion of law that it should have known of its existence at that time. Because we believe that the District Court's finding of fact is clearly erroneous and its conclusion of law unwarranted on the record, we are compelled to reverse the judgment of the District Court and to order that the writ of habeas corpus be dismissed. See United States ex rel. Sadness v. Wilkins,312 F.2d 559 (2 Cir., 1963).
 
 
 7
 There was no direct testimony or evidence in the District Court to suggest that the Board of Parole had any knowledge whatsoever of Weber's 1955 arrest and conviction until he admitted their existence when he was questioned on February 25, 1960; moreover, there was uncontroverted testimony that it was only upon Weber's admission that the parole officials learned of his arrest and conviction for the first time. On this state of the record, the District Court's finding of fact that the Board of Parole knew of Weber's arrest and conviction before he admitted their existence in 1960 is clearly erroneous and may not do service as an alternate foundation for a holding of lack of diligence on the part of the State. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); see Romero v. Garcia & Diaz, Inc., 286 F.2d 347, 356 (2 Cir.); cert. denied, 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860 (1961).
 
 
 8
 The District Court also held, however, that even if the Board of Parole did not actually know of the existence of the 1955 arrest and conviction until 1960, it should have known of their existence before that time inasmuch as thorough investigations into Weber's background were made in 1956, when he sought and received permission to go to Europe, and in 1959, when he was placed under scrutiny by the New York City Police Department and the Board of Parole. In these circumstances, Judge Noonan said, 'This Court finds it inconceivable that experienced parole officers could not have uncovered the existence of such arrest on the occasion of the two investigations made of the petitioner. The records of Magistrate's Court are public and open to inspection.' However, the reasons advanced by the State to explain its failure to learn earlier of Weber's arrest and conviction argue persuasively taht the District Court's conclusion of law was in error. Since Weber was not fingerprinted in connection with the 1955 proceedings, the Board of Parole did not learn promptly that a parolee had been arrested and convicted, as it would have learned the very next day if fingerprints had been taken. Nonetheless, it is true, as the District Court pointed out, that the Board of Parole could have learned earlier of Weber's arrest and conviction by examining the records of the Magistrate's Court. However, the imposition of such a duty of inspection would be both unreasonable, because of the enormous task that the Board of Parole would face in maintaining a constant check on the hundreds of criminal courts in the State of New York in which its thousands of parolees might happen to be convicted, and unwise, because the failure of the Board to make timely discovery of a conviction would result in automatic forfeiture of its statutory right to revoke the parole of a prisoner, even when the parolee had deliberately violated his agreement to report any convictions to the Board. Under the circumstances of the present case-- in which the State would have learned of Weber's 1955 conviction promptly if Weber had lived up to the terms of his release on parole-- we decline to announce that the Board of Parole had the duty to search the records of the Magistrate's Court upon pain of forfeiting the right to act for lack of diligence.
 
 
 9
 Our decision today is based upon the narrow ground that there is no support in the record for the finding of lack of diligence by the State in instituting the parole revocation proceedings against Weber. We therefore obviously have no occasion to reach or pass upon the question of whether such lack of diligence, in circumstances in which it was clearly demonstrated, would constituted a denial of due process to a parole. Compare United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2 Cir., 1963).
 
 
 10
 Reversed, with instructions to dismiss the writ.