UNITED STATES of America ex rel.
Silas MORRIS, Petitioner,

v.

Hon. W. FITZPATRICK, Warden, Federal
House of Detention, New
York, Respondent.

No. 68 Civ. 2574.

United States District Court
S. D. New York.

Oct. 21, 1968.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for the Government, John R. Wing, Asst. U. S. Atty., of counsel.

Harold Rabner, New York City, for petitioner.

## MEMORANDUM

FRANKEL, District Judge.

On May 20, 1963, the relator was sentenced to a term of five years as a federal narcotics law violator. He remained in prison until August 24, 1966, when, pursuant to 18 U.S.C. § 4163, he was mandatorily released, subject to the requirement in 18 U.S.C. § 4164 that he "be deemed as if released on parole until the expiration of the maximum term * * * for which he was sentenced less one hundred and eighty days." Pursuant to the latter statute, he was to remain subject to parole supervision until October 8, 1967.

On November 5, 1966, just over two months after his release from federal prison, relator was arrested by New York City police and charged with state narcotics law violations. He requested of his federal probation officer that no parole violation warrant be issued until after the pending state charges were disposed of. As will appear presently, the nub of his complaint now is that the parole officials, following their usual practice, complied for a longer time with this request than he now claims they should have.

The relator remained in state custody on the state narcotics charges until March 13, 1967. While he was thus im-

prisoned, unable to make bail and represented by assigned counsel, he moved to suppress as evidence against him some glassine envelopes containing narcotics which he claimed had been taken from him in the course of an unlawful arrest. At an evidentiary hearing upon the motion, the prosecution testimony, credited by the trial judge, showed that relator and two companions were on the street on the evening in question; that a police officer alighted from a police car and approached the three men (evidently because he was suspicious of them, but without doing or saying anything that signified an arrest or intended arrest as he approached); that relator, seeing the officer, removed a hand from his pocket and threw a batch of glassine envelopes to the ground; that the officer retrieved them and then made the arrest.[1] The motion to suppress was denied, and relator, on March 13, 1967, pleaded guilty to a lesser narcotics charge than the one on which he had been indicted. Sentenced to a term of six months upon that plea, he was promptly released from state custody, having satisfied the sentence by his stay in prison from the time of his arrest on November 5, 1966.

Despite the guilty plea, relator exercised the right available under state (unlike federal) law to test upon appeal the denial of his motion to suppress. See United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2d Cir. 1967). It may be supposed in passing that having served the sentence upon his plea, relator might have been primarily concerned, if the state conviction stood, with such collateral consequences as a finding of federal parole violation. Be that as it may, he told his probation officer that he had been convicted, and added that an appeal was pending. According to relator, whose account in this and other respects is accepted for purposes of this decision, he did not request further delay, but was told by the probation officer that the

federal parole authorities would continue to withhold issuance of a violation warrant while the state appeal was pending. He was also told—and this central fact is stipulated—that such a warrant *would* be issued if and when his conviction was affirmed. It is urged in the respondent's papers that the probation officer was unaware until September of 1967, that the relator had pleaded guilty and was appealing only on the question of the allegedly unlawful seizure. In the view the court takes of the ultimate issues, this is not a matter of decisive importance, though it is of some relevance to relator's basic thesis that the probation authorities were "negligent."

Decision upon relator's initial state appeal was not rendered until March 7, 1968, when the Appellate Term sustained the denial of his motion to suppress and, accordingly, affirmed the conviction. As this is written, it appears that petitioner's application for leave to appeal to the Court of Appeals is still pending.

Before the affirmance by the Appellate Term, however, relator's probation officer appears to have been informed, incorrectly, that the appeal had not been perfected. The officer also learned about the same time of the guilty plea and limited issue on appeal. These things were reported to the parole board, and a violator's warrant was issued, dated September 14, 1967. The existence of the warrant was not brought to relator's attention, however, until over six months later when, early in April of 1968, he was found to be residing in the Manhattan House of Detention because of a new criminal charge the substance of which is neither revealed nor material in the present proceeding. The warrant was lodged as a detainer and executed by federal marshals when relator was released from state custody on May 29, 1968. On July 17, 1968, after he had filed the petition now before the court, relator received a revocation hearing;

---

1. Similar actions, with similar consequences, were said to have been committed by relator's companions.

his mandatory release was revoked; and he was remanded to resume service of his unexpired term.

The period between issuance and execution of the violation warrant was not uniformly a model of speedy and cogent performance by the responsible federal agencies. To begin with, on or about September 23, 1967, after the warrant had issued, relator received from his parole officer a form of "Final Report" to be completed by the parolee at the termination of his supervision. It is undisputed that relator completed this form accurately and returned it, a step which would normally have signaled the end of his time under supervision. The government's opposing papers say this report was sent to relator "by mistake but that in no way invalidates the warrant which had been previously issued by the Board of Parole * * *."

It seems also to be undisputed that the relator was residing at a New York City address known to the parole authorities from September 14, 1967, when the warrant issued, until the beginning of November 1967. From early November 1967 until early January 1968, he was in Detroit visiting his parents. Upon his return to New York City in January, he took up residence at an address different from the one in the records of the parole authorities, and he seems to have resided there until his arrest at the beginning of April. So far as records and responsible recollections show, there was no effort to execute the warrant until after relator's April arrest.

In sum, roughly 6½ months elapsed between issuance of the warrant and its execution. Had the marshal proceeded with utmost promptness, it could well have been executed in the six weeks or so before relator's departure for Detroit. Thereafter, with petitioner successively in Detroit, at a new address in New York City, and then in jail, the delay in arresting him, if not necessarily desirable, is both understandable and reasonable considering the priorities federal marshals must recognize in allocating their finite energies.

■ The court has concluded that neither the initial charge of "negligence" in sending him a "Final Report" form nor the weightier claims of fatal delay argued by assigned counsel entitle relator to the release he seeks. The specific bases of this conclusion are outlined in the paragraphs which follow.

1. In the original papers filed *pro se*, the relator pitched almost his entire case on the theory that the parole authorities were "negligent" in sending him the "Final Report" form which he completed on October 6, 1967, and promptly filed as the last paper step in his period of parole supervision. There is no question that the episode resulted from a "mistake" on the government's side. It is likewise unquestioned that the relator could have experienced a surge of relief, perhaps mingled with a sense of triumph, when he managed to complete and file the piece of paper without having been tagged as a parole violator. Granting all this, the essentially clerical error, in all the circumstances, cannot effect the absolution relator seeks from it.

Morris had been aware from the outset that his alleged state narcotics violation, following so quickly his release on parole, would lead to revocation proceedings if he was finally convicted. Knowing this, he asked that the warrant be withheld while he resisted such a conviction. Even after his conviction he knew that a final affirmance would lead to issuance of a warrant. He was possessed, in short, of all the knowledge and sophistication necessary to make clear that the federal parole officials had by no means closed the book on him. To sustain his "negligence" theory as a ground for habeas corpus "would allow the guilty to escape punishment through a legal accident." Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957).

2. The case for Morris is not helped by the delay of ten months between his alleged state infraction (November 5, 1966) and issuance of the parole violation warrant (September 14, 1967). As he concedes, the literal power of the

parole board to issue such a warrant subsists until the expiration of the parole period, 18 U.S.C. § 4205, and there is no question that this limitation was satisfied. Furthermore, the decision to withhold issuance during the pendency of the state appeal was patently reasonable, even apart from the fact that this was exactly what the relator had requested. To be sure, Morris had pleaded guilty in the state court, and his appeal concerned "merely" an asserted issue under the Federal Constitution. But that appeal lay under a procedure which was designed to preserve for people like the relator "all remedies with respect to the alleged unlawful search that would otherwise have been available—including ultimate resort to a federal court." United States ex rel. Molloy v. Follette, 391 F.2d 231, 232 (2d Cir. 1968). Vindication of his position on appeal—or, conceivably, in federal habeas—would have erased the conviction. It would also have meant, guilty plea or not, that relator had spent over four months in a state jail upon a charge for which he ought not lawfully to have been punished. These were contingencies concerning which the parole board was surely entitled to await resolution before proceeding to issue its warrant and to consider revocation. Shelton v. United States Board of Parole, 388 F.2d 567, 570, 571 (D.C.Cir. 1967); Jefferson v. Willingham, 366 F.2d 353, 354 (10th Cir. 1966); Avellino v. United States, 330 F.2d 490 (2d Cir. 1964).[2]

■ 3. Reverting once again to the less than dispositive subject of the parole board's statutory "jurisdiction," that agency seems clearly to be empowered, where its warrant issues during the period of supervision, to execute the warrant and hold its hearing after

that period has expired. Castillo v. United States, 391 F.2d 710 (2d Cir. 1968); Shelton v. United States Board of Parole, supra, 388 F.2d at 571. It seems equally clear that at some point the essential fairness required by principles of due process would forbid the board to revoke parole and order a parolee back to prison after "unreasonable" delay in executing its warrant. Greene v. Michigan Department of Corrections, 315 F.2d 546 (6th Cir. 1963); cf. Avellino v. United States, 330 F.2d 490 (2d Cir. 1964); but see United States ex rel. Weber v. People of State of New York, 316 F.2d 603, 606 (2d Cir. 1963). But this premise, while it adds some weight to relator's case, is by no means sufficient to sustain the writ he seeks.

In this context, as in most, the notion of "reasonableness" invites inquiry into the alleged hurt or prejudice resulting from allegedly unreasonable conduct. The question is not merely whether there was delay, or even delay without an impressive reason for it. Except possibly "in an extreme case," which this one is not, "actual prejudice vel non is the focal point of the inquiry." Shelton v. United States Board of Parole, supra, 388 F.2d at 574. The relator's case is lost at that focal point.

The delay in this case effected no pertinent species of prejudice, and none is really claimed. The state violation was clear and admitted. Its immediate proximity to relator's release from federal prison was likewise undisputed. There was no question of lost memories or lost evidence or any suggestion that the relator at any time, early or late, could have said anything substantial to answer the charge of violation.

It follows that the petition must be, and it is, denied. It is so ordered.

2. This conclusion is not altered by the fact that the warrant actually issued while relator's state appeal was still pending—as, indeed, a further appeal appears to be unresolved until this day. The period of supervision was about to expire, and jurisdiction to issue it would have been lost if it had not been exercised before that. 18

U.S.C. § 4205. Whether the pending appeal might have justified or required further delay in executing the warrant or in holding a revocation hearing is an obviously unnecessary speculation given the facts as they now exist and the relator's specific grievances.

While that order states and ends the authoritative disposition, the court goes on to note with gratification the expression of possible willingness by the Board of Parole to reconsider this case in light of circumstances which were not fully appreciated when the revocation hearing was held. As parole officials and other penologists know better than judges, the sense of injustice is surely a pertinent reality to be weighed among the diverse influences that may promote or retard reconciliation between the offender and the community. Even "negligence," when it raises false hopes—hopes that lack any "legal" basis—is a possible factor in such a reckoning. And so, without pretending to any power of revision in this case—having, in fact, disclaimed it—the court pays respectful tribute to a display of sensitivity and flexibility in a collaborative agency concerned with the administration of justice.

One further note of appreciation: the court and the public are heavily indebted to assigned counsel, Harold Rabner, Esq., who has represented the relator with earnestness, imagination and skill.