Charles GAINES, Petitioner,

v.

**UNITED STATES BOARD OF PAROLE,**
Respondent.

**No. 71 Civ. 2948.**

United States District Court,
S. D. New York.

Oct. 29, 1971.

Henry F. Minnerop, New York City, for petitioner.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for respondent; James T. B. Tripp, Asst. U. S. Atty., of counsel.

## OPINION

FRANKEL, District Judge.

The petitioner in this proceeding under 28 U.S.C. § 2255 was sentenced on January 14, 1966, to concurrent five-year terms (the mandatory minimum) following his conviction on two counts for violations of 21 U.S.C. §§ 173 and 174. With credit for "good time" and for time in custody before the date of sentence, he was mandatorily released, and thus placed in the status of a parolee, on January 9, 1969. See 18 U.S.C. § 4163. On August 24, 1969, he was arrested and charged with possession of counterfeit money. The facts giving rise to these charges led to the revocation of parole and reconfinement which comprise the subject of the instant proceeding.

Petitioner retained counsel to assist him in fighting revocation of his parole. After at least one adjournment, the revocation hearing was set for October 17, 1969. Petitioner himself was being held without bail at all pertinent times. He was told of the scheduled hearing date a day, possibly two, before. He was not permitted to call his retained attorney, who heard of the hearing only on the day of its commencement, when he was engaged in court elsewhere and unable

to come to petitioner's assistance.[1] The attorney conveyed "through [his] office" a request for adjournment of the hearing. Despite that, and over petitioner's protests, the hearing was commenced and conducted without the lawyer's attendance. No reason for haste has been made to appear. The order of revocation was not issued until March 10, 1970.

The arrest and counterfeiting charges leading to revocation of petitioner's status on mandatory release resulted also in another prosecution and conviction. On July 22, 1970, Judge Cooper sentenced petitioner to two four-year terms, to run concurrently commencing upon expiration of the period still to be served after his reconfinement on the narcotics charges. The events underlying that conviction and its subsequent history on appeal are matters of some moment for present purposes.

Petitioner's counterfeiting arrest was effected at night, without a warrant, in his dwelling place. As a familiar type of incident in the course of the arrest, a search unearthed two counterfeit bills crucial to one or both of the counts on which he was later convicted. The search was attacked unsuccessfully on appeal, and the conviction was affirmed by the Second Circuit, 441 F.2d 1122. On petition for certiorari, however, the Solicitor General acknowledged serious doubts about the validity of the warrantless nighttime entry leading to the finding of the incriminating evidence. He suggested granting of the writ and a remand to the Circuit "for reconsideration of the validity of the arrest and seizure, and, if it is held that the seizure was unconstitutional, the validity of supporting the conviction on count 1 alone."[2]

The Supreme Court, on October 19, 1971, acted in accordance with that request and ordered the proposed remand, 92 S.Ct. 223.

In the setting as it has now been illuminated, the Parole Board's order revoking petitioner's mandatory release must be struck down. If it were necessary to go so far, this court would hold, on thoroughly persuasive if not technically "binding" authority, that the due process of law includes the right to counsel at parole revocation hearings. United States ex rel. Bey v. Connecticut Board of Parole, 443 F.2d 1079 (2d Cir. 1971).[3] As the Government acknowledges, however, our case is simpler in this respect for petitioner; the Board of Parole provides in its own regulations that the defendant is entitled to retain counsel for a revocation hearing. 28 C. F.R. § 2.41. The Board may not block the exercise of the right thus provided. The unexplained haste and omission of adequate notice, followed by the insistence upon proceeding without petitioner's attorney, amounted to the denial of the assistance of counsel. The revocation proceeding was vitiated when the Board violated its own regulation. E. g., United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States ex rel. Donham v. Resor, 436 F.2d 751, 754 (2d Cir. 1971).

The Government urges that the revocation decision must stand despite that flaw because the decision "is premised on irrefutable evidence that the parolee violated a condition of his parole, or, more pertinent here, on a criminal act proved after a full trial prior to pa-

---

1. Government counsel intimates that issues of fact might be raised about these events. But none has been raised, and this petition has been pending since June 14, 1971. The account given here is sworn to by petitioner and the lawyer he retained for the revocation hearing. Nobody swears to any contradictory fact. In the circumstances, neither petitioner nor the court should be expected to wait until some possible future time, not specified, when the Government may possibly present something generating an issue of fact.

2. The Government's position being that count 1 might stand in any event because the bills seized in the search were not essential to it.

3. The cited decision has been vacated as moot, 92 S.Ct. 196 (Oct. 19, 1971). Its cogency in this court is not much diminished for that.

role revocation." [4] As to the substantial likelihood that the "irrefutable evidence" was gotten in an unconstitutional nighttime search, the Government points out that the exclusionary rule has been held inapplicable to parole (or mandatory release) revocation hearings. United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970). But that pushes us too swiftly toward a treacherous slope. If the evidence is clear, though unconstitutionally seized, and if this renders academic the right to counsel, why bother with the hearing at all? Passing that, there is more than a rhetorical question opposing the Government's position. The *Sperling* decision, announced a year ago, was in a "case of first impression in this Circuit." 426 F.2d at 1164 (Lumbard, C. J., concurring). It produced three concerned opinions. It left open the possibility that a showing of "harassment" of parolees might lead to reconsideration on some other day. See *id.* at 1164 (opinion of Hays, J.); *id.* at 1166 (Lumbard, C. J., concurring). It certainly did not foreclose the Board of Parole itself from taking another look to see whether its rehabilitative goals are fairly served by demonstrating to parolees that the Fourth Amendment's protections mean nothing for them.[5] Much more cogently, it did not prevent the Circuit itself in *Bey* from holding denial of counsel a fatal defect where the parolee, exactly as in this case, suffered revocation because of "irrefutable" evidence found in a search. See 443 F.2d at 1082, 1083–1084.

In forceful reasoning, squarely pertinent here, the *Bey* opinion highlights the need for counsel: to treat not only with the "occurrence or nonoccurrence" of the questioned events, but with their "significance" as well (*id.* at 1087); to develop possible "mitigating circumstances and hidden significances" (*id.*);

to present the facts so as to press for measures "less severe than revocation" (*id.* at 1088); in general, to perform the advocate's role in a fashion more effective than is likely to be achieved by the unschooled defendant fending for himself "from behind prison walls" (*id.*). See also Note, Parole Revocation in the Federal System, 56 Geo.L.J. 705, 723–24 (1968). Furthermore, whatever the Parole Board might decide at such a hearing, it is part of the lawyer's responsible function to build a record. With the *Sperling* decision so visibly inviting further study, and possibly ultimate review by the Supreme Court, the Board may not now excuse the deprivation it effected on the theory that the fundamental right to counsel could have made no possible difference.

■ This leaves the question of remedy. Petitioner claims the order of revocation must simply be erased, and that there cannot now be a valid revocation hearing because his period of parole supervision was due to terminate (had there been no revocation) on March 12, 1970. 18 U.S.C. § 4164. But the Government is on firm ground when it responds that the key fact establishing timeliness was issuance of the revocation warrant on September 4, 1969, 18 U.S.C. § 4205. The Board then became empowered to hold its hearing on the question of possible termination or modification, 18 U.S.C. § 4207, without being restricted by what would otherwise have been the termination date. Shelton v. United States Board of Parole, 128 U.S.App.D.C. 311, 388 F.2d 567 (1967); United States ex rel. Morris v. Fitzpatrick, 291 F.Supp. 238 (S.D.N.Y. 1968). The power is no more destroyed by a later "reversal" for error than is the familiar power to retry a defendant whose conviction is reversed on appeal. Again, *Bey* is closely in point, but this time against petitioner. There, habeas

---

4. Government's Memorandum of Law 4.

5. Cf. *Bey*, 443 F.2d at 1089: "One certain way to increase a prisoner's sense of resentment and to discourage his will

eventually to return to a normal life would be to deny him basic safeguards essential to the fundamental fairness of a decision to deprive him of the liberty he gained upon parole release."

was granted, and a new revocation hearing ordered, though the infirm hearing and revocation had transpired over ten years earlier.

The petition is granted. The order revoking petitioner's release is set aside. He is to be released from confinement under the judgment of January 14, 1966, unless the Board of Parole, within thirty (30) days from this date (or some longer period on consent), has held a new revocation hearing at which petitioner's right to counsel, along with his other rights, has been accorded in full. If petitioner (as now appears) is no longer able to retain counsel, provision must be made for assigned counsel.

It is so ordered.[6]

It is peculiarly fitting to end this opinion with an expression of gratitude for the efforts of Henry F. Minnerop, Esq., who served as assigned counsel and has demonstrated vividly in this proceeding the unique benefits such services may afford.

---

6. This court is not armed with the facts for computing what, if anything, remains to be served of the sentence originally imposed on January 14, 1966. It may have expired in any event. But petitioner's complex situation still includes the concurrent four-year terms imposed by Judge Cooper, to follow completion of the sentence which concerns us. Assuming those terms stand, a matter now before the Circuit (see *supra*), and assuming a proper order revoking mandatory release is not made, it may be (subject, of course, to Judge Cooper's authority over the matter) that petitioner should have credit on the counterfeiting sentence for the time served under the invalid revocation of his mandatory release. This court is open, in any event, to consider additional or different consequences that may be claimed to flow from today's decision.